## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 13-01545 JVS (RNBx)                    Date   March 25, 2016

Title   Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

Present: The Honorable   James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS)
              **Order Granting Defendant's Motion for Summary Judgment**

Plaintiff Altinex, Inc. ("Altinex") asserts that Defendant Alibaba.com Hong Kong Limited ("Alibaba") is infringing six of its patents and two of its registered trademarks. (First Amended Complaint ("FAC"), Docket ("Dkt.") No. 45.) Pursuant to Federal Rule of Civil Procedure 56, Alibaba moves for summary judgment on all claims asserted in the First Amended Complaint filed by Altinex. (Mot. Summ. J., Dkt. No. 89.) Altinex opposes. (Opp'n Mot. Summ. J., Dkt. No. 92.) Alibaba has filed a reply. (Reply, Dkt. No. 99.)

In accordance with Local Rule 56-1, Alibaba filed a proposed statement of uncontroverted facts and conclusions of law. (Dkt No. 89-2.) Altinex filed a statement of genuine disputes and additional facts that Altinex asserts create triable issues of fact ("SGD"). (SGD, Dkt. No. 93.) Alibaba responded. (Reply to SGD, Dkt. No. 99-1.)

For the following reasons, the Court grants Alibaba's motion for summary judgment.

## I.   **Factual and Procedural Background**

Altinex manufactures electronic equipment used in professional audio visual presentation systems, including a line of products that tilt up from a table top and reveal a number of connectors for audio visual equipment. (FAC ¶¶ 2–3.) Altinex asserts it owns six patents related to these products. Altinex has asserted one utility patent in this case, U.S. Patent No. 6,802,577. (Id. ¶¶ 13–18.) Altinex has asserted five design patents in this case. (Id. ¶¶ 20–48; SGD ¶ 57.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 13-01545 JVS (RNBx)          Date   March 25, 2016

Title   Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

Altinex also sells these products under two registered trademarks, including an "ALTINEX" trademark, Reg. No. 2252463, and a "TILT'N PLUG" trademark, Reg. No. 2462566. (FAC ¶¶ 3, 50, 57; SGD ¶ 104.)

Alibaba operates the websites www.alibaba.com and www.aliexpress.com (the "Websites"). (SGD ¶ 2.) Third parties, which are not owned or controlled by Alibaba, list various products on the Websites. (Id. ¶¶ 3–6.) Those third parties author their own listings; Alibaba only hosts the listings. (SGD ¶¶ 6, 90.)

Users who register an account on the Websites must agree to the Free Membership Agreement. (Id. ¶ 20.) The Free Membership Agreement specifies that Alibaba only "provides an electronic web-based platform for exchanging information," "does not represent the seller or the buyer in specific transactions," and "does not control and is not liable to or responsible for the quality, safety, lawfulness or availability of the products or services offered for sale" by sellers. (Id. ¶ 21.)

Users who make any purchase on the website must also agree to the Transaction Services Agreement. (Id. ¶ 22.) The Transaction Services Agreement specifies that "[e]ach Online Transaction is made by and between a Seller and a Buyer only," that "[Alibaba] shall not be considered as a party to the Online Transaction," that "[Alibaba] does not represent Seller or Buyer in any Online Transaction," and that "[Alibaba] will not be responsible for the quality, safety, lawfulness or availability of the products or services offered under any Online Transaction." (Id. ¶ 23.)

Users must register for an account to purchase or list items on aliexpress.com, but users may browse listings without registering for a membership. (Reply to SGD ¶ 108.)

The website at www.alibaba.com has a search window in which potential buyers can type in a description of a product for which they want to search. (Answer to FAC ("Answer") ¶ 10, Dkt. No. 49; SGD ¶ 100.) As a result of that search, a third-party seller can display to users photographs, descriptions, prices, minimum orders and other information related to the products it sells. (Answer ¶ 10; SGD ¶¶ 6, 76, 90.) The website at www.aliexpress.com differs in that the web pages on the website include "Buy Now," "Add to Cart," and "Add to Wish List" buttons as well as locations in which the buyer can specify the quantity desired and shipping methods. (Answer ¶ 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

Altinex filed this lawsuit on October 2, 2013. (Dkt No. 1.) Altinex alleges that Alibaba had knowledge of specific infringing products on its website only as early as November 2013. (FAC ¶¶ 82, 90, 98, 106, 114.) Altinex argues that certain communications in November 2013 gave Alibaba knowledge of these specific infringing products. (See SGD ¶ 143.) Altinex identifies no other evidence suggesting that Alibaba intended for end users to infringe any claim of any asserted patent. (SGD ¶ 72. See also Opp'n Mot. Summ. J. pp. 21–23 (arguing that post-filing knowledge is sufficient to sustain a claim of induced infringement and arguing that a reasonable jury could find Alibaba induced infringement by deliberately maintaining listings for an unduly long period).)

Finally Altinex does not dispute that:

- Alibaba has an Intellectual Property Rights (IPR) Protection Policy that prohibits listing counterfeit and other unauthorized items on the Website.
- Intellectual property owners may use Alibaba's AliProtect feature to report listings that they believe infringe their intellectual property.
- After receiving and reviewing an AliProtect submission, Alibaba removes the offending listing if appropriate.
- Altinex never used AliProtect to report any allegedly infringing listings before filing this lawsuit.
- Since filing this lawsuit, Altinex has not used AliProtect to report any allegedly infringing listings.
- Altinex has identified no factual basis for any contention that AliProtect is ineffective to protect against unauthorized uses of intellectual property.

(SGD ¶¶ 7–11; Hagiz Decl. Supp. Def.'s Mot. Summ. J. ("Hagiz Decl. I") Ex. 20, p. 12, Dkt. No. 89-24 (response to Interrogatory No. 7).)

## II.   **Legal Standard**

### A.   Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those necessary to the proof or defense of a claim, and are determined

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 13-01545 JVS (RNBx)                Date    March 25, 2016

Title    Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

by the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To determine whether summary judgment is appropriate, federal district courts must engage in a two-step process. First, the party moving for summary judgment bears the initial burden to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be satisfied by either (1) presenting evidence that negates an element of the non-moving party's case or (2) showing that the non-moving party has failed to establish an element of the non-moving party's case. Id. at 322-23. If the party moving for summary judgment does not bear the burden of proof at trial, it may show the absence of a genuine issue of material fact by showing that "there is an absence of evidence to support the non-moving party's case." Id. at 325. Second, if the moving party has met its initial burden, the burden then shifts to the party opposing summary judgment to designate "**specific facts** showing there is a genuine issue for trial." Id. (emphasis added)

In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, when the non-movant's purported evidence or interpretation of events is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

"A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by citing to particular parts of materials in the records, including . . . affidavits or declarations . . . ." Fed. R. Civ. P. 56(c)(1)(A). However, "an affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.    <u>Motion to Preclude Expert Testimony</u>

Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999); <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 590-91 (1993). Federal Rule of Evidence 702 permits expert testimony if "(a) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A expert can be qualified "by knowledge, skill, experience, training, or education." Id.

A trial court has a "gatekeeping" obligation to admit expert testimony only when it is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire Co., 526 U.S. at 147-149. "In Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002). The Supreme Court later held that "a trial court may consider one or more" of the Daubert factors in determining the reliability of nonscientific expert testimony. Kumho Tire Co., 526 U.S. at 141 (emphasis in original). Further, the court has "broad latitude" to decide how to determine the reliability of the testimony and whether the testimony is in fact reliable. Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1064 (9th Cir. 2002); see Kumho Tire Co., 526 U.S. at 141. The "test of reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Id. (internal citations omitted).

III. **Discussion**

   A.   Summary Judgment - Trademark Claims

As the Court noted in its prior order denying, in part, Alibaba's motion for judgment on the pleadings, a claim for trademark infringement requires the plaintiff to establish: "(1) ownership of the trademark at issue; (2) use by defendant, without authorization, of a . . . counterfeit . . . of the moving party's mark in connection with the sale, distribution or advertising of goods or services; and (3) that defendant's use of the mark is likely to cause confusion, or to cause mistake or to deceive." Toho Co., Ltd. v. William Morrow & Co., Inc., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998) (citing 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 13-01545 JVS (RNBx)        Date   March 25, 2016

Title   Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

U.S.C. § 1114(1)(a)).

Alibaba does not contest ownership of the marks at issue in this case, but strongly contests that Alibaba used either trademark and argues that there is no likelihood of confusion. The Court holds that Alibaba is entitled to summary judgment on the trademark infringement claims, for the following reasons.

      1.    Trademark Use

There is some academic dispute over whether "use in commerce" is an element of a trademark infringement action. Compare 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed.) ("Author's Opinion: It is my view that there is no separate statutory requirement of 'trademark use.'") with Stacey L. Dogan & Mark A. Lemley, Grounding Trademark Law Through Trademark Use, 92 Iowa L. Rev. 1669 (2007); Stacey L. Dogan, Beyond Trademark Use, 8 J. Telecomm. & High Tech. L. 135 (2010). Nevertheless, in this circuit, courts have treated use as an element of a trademark claim. Network Automation, Inc. v. Advance Systems Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) ("we note that the district court correctly found the prerequisite 'use in commerce' in [defendant's] use of the mark to purchase keywords to advertise its products . . . ."); Karl Storz Endoscopy Am., Inc. v. Surgical Tech., Inc., 285 F.3d 848, 856 (9th Cir. 2002) (citing U.S. Surgical Corp. v. Orris, Inc., 5 F. Supp. 2d 1201, 1209 (D. Kan. 1998) (acknowledging that one may, in the stream of commerce, manipulate or repair a marked product without implicating the element of "using" that mark in commerce). The Court concludes that, even if a showing of "trademark use" is often a low bar, low enough to implicate the purchase of a search engine keyword, trademark use is still an element of an infringement action in this circuit. See also Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 956–58 (C.D. Cal. 1997) ("something more" than a registration of a domain name is required before the use of the domain name may be infringing) (pre-Anticybersquatting Consumer Protection Act case).

Altinex argues that Alibaba "used" Altinex's trademark by "permitting Altinex's trademarks to be used as search terms, such that typing 'ALTINEX' or 'TILT 'N PLUG' in the search window in www.alibaba.com would retrieve counterfeit Altinex products." (Opp'n p. 3.) Altinex further argues that "Alibaba had control over its www.alibaba.com website and could turn on and off its feature at will." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

Alibaba presents a few cases suggesting that this behavior, standing alone, does not establish liability for direct trademark infringement. First, Alibaba argues that a similar claim was addressed in <u>Tiffany (NJ) Inc.</u> v. <u>eBay, Inc.</u>, 600 F.3d 93 (2d Cir. 2010).[1] Alibaba also cites decisions of district courts in this circuit applying similar reasoning as <u>Tiffany</u>. <u>See</u> <u>Free Kick Master LLC</u> v. <u>Apple Inc.</u>, No. 15-cv-3403, ___ F. Supp. 3d ___, 2015 WL 6123058, at *3 (N.D. Cal. Oct. 19, 2015) (finding that plaintiff could not show that defendants themselves used plaintiff's mark in commerce, although each defendant was alleged to offer in their online store an app whose title infringed a registered mark). Altinex does not distinguish this case. However, as explained below, the Court need not address whether Altinex's claims are barred as a matter of law because the Court concludes that Altinex simply has not carried its evidentiary burden in opposing Alibaba's motion for summary judgment

Altinex's theory of liability is that Alibaba configured its website to provide the capability that when a user searches for the trademarked terms "ALTINEX" and "TILT 'N PLUG," Alibaba would retrieve results that were, in fact, infringing products. (Opp'n pp. 3–4.) Altinex's own propounded evidence does not support its own theory. Altinex puts forth Exhibit 106, (Dkt. No. 94), excerpted on the following page.

---

[1] This Court noted in its prior order that the Court was not bound by Second Circuit precedent. (<u>See</u> March 16, 2015 Order p. 7 n.5, Dkt. No. 46.) Of course, that remains true. Nevertheless, the Court further suggested that <u>Tiffany</u> involved only genuine goods. (<u>Id.</u>) The Court reconsiders that description of the case. In fact, <u>Tiffany</u> involved counterfeit sellers as well. The <u>Tiffany</u> court held that "to impose liability because [the search engine] **cannot guarantee the genuineness of all of the purported Tiffany products** offered on its website would unduly inhibit the lawful resale of genuine Tiffany goods." <u>Tiffany</u>, 600 F.3d at 103 (emphasis added).

Altinex–Altinex Manufacturers, Suppliers and Exporters on Alibaba.com

Welcome to Alibaba.com , **Join Free** | Sign In

Buy ▾     Sell ▾     Community ▾     **My Alibaba** ▾

| Products ▾ | altinex | | Search | or |

Advanced Search

Home > Products > "altinex" : 1 Product(s) from 1 Supplier(s)

**Need Help?**       Contact Us

**Did you mean:** **alpine** (9237)

**Search Feedback**
Did you find what you were looking for?

Yes | NO

| **Products** | **Suppliers** Beta |

Region:    ◯ East Asia (1)

Country:   China (Mainland) (1)

**Alibaba Mobile App**

Sort by: ◯    Gold Supplier ◯        Onsite Checked        ☐        Assessed Supplier ☐

View:         Order Quantity [      ]    ☐    Online

Scan or click to download

**Manufacturer supply JS-1 tilt'N plug seat**                    Beijing JS Te

Min. Order: **40 Sets**                                          Contact Deta

FOB Price: **US $20-70 / Set**                                   China (Mainla

Place of Origin: **CN;BEI** ; Brand Name: **JS** ; Model Number: **JS-1 Altinex tilt'N plug seat** ;
Color: **Silver**

**Contact Supplier**        Offline

1         Go to Page [      ] [ Go ]

Haven't found the right supplier yet ?                           Want product and industry knowledge for "altinex" ?

**AliSourcePro**                                                 **Trade Alert**

Tell us what you buy, Alibaba's Industry Sourcing Specialists will help you match the right    Trade Alerts are FREE updates on topics such as tren
supplier.                                                                                       supplier information - sent directly to your email inbox!

**Post Buying Request Now >>**                                   **Subscribe Now >>**

Do you want to show **altinex** or other products of your own company? Display your Products FREE now!

Email this page              Bookmark this page              Print this page

Connect with us:        Free APP:         Input keywords                    Subscribe        TradeManage

Browse by:Manufacturers - Online Shopping - China Gold Suppliers - All Products - Countries - Importers - Customs Data - Buying Leads - China - India

Alibaba Group: Alibaba China - Alibaba International - AliExpress - Taobao Marketplace - Tmall.com - eTao - Juhuasuan - Alibaba Cloud Computing - China Yahoo! - Alip

Product Listing Policy - Intellectual Property Policy and Infringement Claims - Privacy Policy - Terms of Use

Copyright Notice © 1999-2013 Alibaba.com Hong Kong Limited and licensors. All rights reserved.

Suggestions          TradeManager

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

As is evident from this excerpt, a single search result for the word "altinex" was retrieved. The excerpt further shows that the listing appears to have resulted because the word "Altinex" appears in the listing under "Model Number." Altinex acknowledges that it is third parties, not Alibaba, that author these listings. (SGD ¶¶ 6, 76, 90.) Altinex puts forth absolutely no other evidence to argue that Alibaba configured its search engine in a way that would make the search engine retrieve listing of counterfeit products but for the way that third parties author their listings. Altinex has not, for instance, developed any record that this is a case of paid, keyword search advertising. See Network Automation, Inc., 638 F.3d at 1143. See also Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020, 1024 n.11 (9th Cir. 2004). Neither does Altinex put forth any evidence that Alibaba entered the word "Altinex" in the "Model Number" field on its own accord or even suggested it. Cf. Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1173–74 (9th Cir. 2008) (In analyzing section 230 immunity, web service provider was not responsible for the development of content that is simply published as written). Altinex also provides no evidence that Alibaba had any prior knowledge that persons added the word "Altinex" to the model number in this listing or any other listing.

On the record before the Court, it is undisputed that Alibaba, just like the search engine in Tiffany, removes product listings that infringe trademark rights that are reported to Alibaba. (SGD ¶¶ 7–15, 78, 79.) In fact, Altinex identified only two listings on the Websites that allegedly infringed its asserted trademarks, (SGD ¶ 12), and those listings have been removed from the Websites. (SGD ¶ 15.) Altinex provides no argument or record to suggest that Alibaba's methods of handling trademark infringement on its website are insufficient. To conclude, as Altinex suggests the Court can, that Alibaba had an affirmative duty—beyond what it already does through the AliProtect system—to police its search engine algorithm to ensure that its search engine does not retrieve particular results based on third parties' independent actions in authoring listings, is not supported by any law, any case cited by Altinex, and is contrary to sound policy in this context. Tiffany, 600 F.3d at 103.

Exhibit 106 continues, as excerpted on the following page (orange text in original Exhibit 106).

Case 3:13-cv-01545-VSF DM Document 41-4 File 02/23/15 Page 9 of 25 Page #:1925
Case 3:13-cv-01545-VSFD Documen 41-4 File 02/23/15 Page 10 of 25 Page #:2202

Welcome to Alibaba.com . **Join Free** | Sign In                                    Buy ▾    Sell ▾    Community ▾    My Alibaba ▾

| Products ▾ | tilt 'n plug | Search | or |

Advanced Search

---

**Need Help?**    Contact Us

**Search Feedback**
Did you find what you were looking for?
**Yes** | **NO**

**Alibaba Mobile App**



Scan or click to download

Home › Products › "tilt 'n plug" : 16 Product(s) from 2 **Supplier(s)**



with AC power and network JS **Tilt 'N plug**
Min. Order: **1 Piece**
FOB Price: **US $45-50 / Piece**

Place of Origin: **CN;BEI** ; Brand Name: **JS** ; Rated Current: **10A** ;
Rated Voltage: **110V-240V** ; Grounding: **Standard Grounding** ;

Contact Supplier    Offline

☐ Compare

Beijing JS Technology Co., Ltd.
Contact Details
China (Mainland)



View 10+ similar products

---



fourth generation technology for mobile in china
home security **Plug 'n Play ip camera**
Min. Order: **1 Set**
FOB Price: **US $30-33 / Set**

Place of Origin: **CN;GUA** ; Technology: **Pan / Tilt / Zoom** ; Type:
**Digital Camera** ; Brand Name: **WANSCAM** ; Sensor: **CMOS** ; Style:

Contact Supplier    Offline

☐ Compare

Shenzhen Wanscam Technology Co.,
Ltd.
Contact Details
China (Mainland)



View 1+ similar products

---



JS **Tilt 'N Plug** with AC power and network
Min. Order: **60 Pieces**
FOB Price: **US $1-50 / Piece**

Place of Origin: **CN;BEI** ; Brand Name: **JS** ; Rated Current: **10A** ;
Rated Voltage: **110V-240V** ; Grounding: **Standard Grounding** ;

Contact Supplier    Offline

☐ Compare

Beijing JS Technology Co., Ltd.
Contact Details
China (Mainland)

View 10+ similar products

---



**Tilt 'N** Table **Plug** Seat with VGA, USB, Audio,
Video interface
Min. Order: **40 Sets**
FOB Price: **US $45-58 / Set**

Place of Origin: **CN;BEI** ; Brand Name: **JS** ; Rated Current: **10A** ;
Rated Voltage: **Universal power 110-240 VAC** ; Application:

Contact Supplier    Offline

☐ Compare

Beijing JS Technology Co., Ltd.
Contact Details
China (Mainland)

View 10+ similar products

---

Cable solution for Office Connection Box
Min. Order: **60 Pieces**
FOB Price: **US $1-50 / Piece**

Beijing JS Technology Co., Ltd.
Contact Details

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

Again, as is evident from this excerpt from Exhibit 106—evidence propounded by
Altinex—Alibaba's search functionality responded to words in the title of listings
created by third parties.

Altinex further speculates that Alibaba disabled "the function" permitting
Altinex's trademarks to be used as search terms. (SGD ¶ 101; Decl. Gershfeld Opp'n
Mot. Summ. J. ("Gershfeld Decl.") ¶¶ 5, 7, Dkt. No. 94.) Altinex does not explain, with
any precision, what this speculated "function" is. For instance, Altinex does not present
any evidence a jury could credit that Alibaba prevented a user from typing "altinex" or
"tilt 'n plug" into the search window and initiating a search. Altinex also does not
explain or provide evidence to show what Gershfeld means when he declares that
"searches yielded no results." Did they retrieve no results whatsoever? Did they retrieve
no infringing results?

Alibaba correctly notes that all Mr. Gershfeld's declaration shows is that no results
were returned when Mr. Gershfeld searched for the terms "altinex" and "tilt 'n plug" a
few days after November 15, 2013. Such search engine behavior would be consistent
with the removal of particular listings, not a manipulation of the search engine itself.
This conclusion is made even more likely by the fact that Altinex has put forth no
evidence that there was any more than a *de minimis* number of listings using the
trademarked terms. Altinex's assertion that Alibaba has manipulated its search feature to
account for Altinex's trademarks is not supported by any specific evidence and,
consequently, no reasonable jury could credit Altinex's speculation.

The Court cannot conclude on this record that it is a "justifiable inference," within
the meaning of Anderson, for the trier of fact to conclude that, on this evidentiary
showing, Alibaba has made a use of Altinex's trademarks, when the record has been
wholly undeveloped as to how Alibaba's search engine operates.[2] Cf. Religious Tech.

---

[2] In Multi Time Machine, Inc. v. Amazon.com, Inc. ("Multi Time Machine I"), 926 F. Supp. 2d
1130 (C.D. Cal. 2013), aff'd after panel rehearing, 804 F.3d 930 (9th Cir. 2015) ("Multi Time Machine
III"), the district court concluded, in dicta, that operating a search engine that can trigger results based on
a user's search for a trademarked term was likely a "use in commerce." Id. at 1136. The district court
concluded, after a resolution of the multi-factor Sleekcraft test, that there was, as a matter of law, no
likelihood of confusion and so the district court did not need to reach the issue of whether there was "use
in commerce." Id. at 1142. Citing Network Automation, 638 F.3d 1137 (9th Cir. 2011), the district court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

Center v. Netcom On-Line Comm'n Servs., Inc., 907 F. Supp. 1361, 1368–69 (N.D. Cal. 1995) (pre-DMCA copyright case holding that "although some of the people using the machine may directly infringe copyrights, courts analyze the machine owner's liability under the rubric of contributory infringement, not direct infringement. . . . Plaintiff's theory would create many separate acts of infringement and, carried to its natural extreme, would lead to unreasonable liability. . . . Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party.").

Altinex's other argument is that Alibaba offers "zero evidence that a third party that lists its products . . . has means or ability to configure the www.alibaba.com website to have the "ALTINEX" and "TILT 'N PLUG" search terms . . . retrieve its . . . products." (SGD ¶ 102.) This argument misstates Altinex's burden to show trademark infringement, and the argument is contradicted by Altinex's admission that third parties author their listings. (SGD ¶ 6.)

For the foregoing reasons, the Court concludes that Altinex has put forth no evidence that would permit a reasonable jury to conclude that Alibaba designed its website search tool to have a user's entry of Altinex's trademark terms in the search window retrieve listings of counterfeit products and Altinex has put forth no evidence that Alibaba has "used" Altinex's trademark, as the term is meant in 15 U.S.C. § 1114.

Consequently, Alibaba is entitled to summary judgment on Altinex's direct

---

noted that the Ninth Circuit had held that "use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is a 'use in commerce' under the Lanham Act." Multi Time Machine I, 926 F. Supp. 2d at 1136. Although the court in Multi Time Machine I opined that Network Automation controlled the outcome in all meaningful ways, this Court disagrees. First, Network Automation did not concern the sale of a trademarked term as a search engine keyword, but rather the purchase of a search engine keyword by a competitor to the owner of the trademarked term. In fact, the search engine operators were not parties to the Network Automation litigation. Second, there is no Ninth Circuit authority suggesting that the creation and operation of a search engine with a free-text entry ability that does no more than return results based on a 1:1 relationship between the terms entered in the search box and the text of the result—the most that Altinex's evidence in this case shows—constitutes a "use in commerce" of any of the potentially near-infinite trademarked terms an end user may choose to enter in a freeform search query. The only persons using the mark in commerce in this case, under the rationale of Network Automation, are the authors of the listings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 13-01545 JVS (RNBx)              Date    March 25, 2016

Title    Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

trademark infringement claims.

        2.     Likelihood of Confusion

As an alternative grounds for summary judgment on Altinex's claims for direct trademark infringement, Alibaba suggests that the Court can conclude, as a matter of law, that there is no confusion. The Ninth Circuit recently held, in a similar context, that summary judgment on likelihood of confusion may be appropriate. See Multi Time Machine III, 804 F.3d 930 (9th Cir. 2015).

The Ninth Circuit held:

> "To whatever extent the Sleekcraft factors apply in a case such as this—a merchant responding to a request for a particular brand it does not sell by offering other brands clearly identified as such—the undisputed evidence shows that confusion on the part of the inquiring buyer is not at all likely."

Id. at 936. The Ninth Circuit made this determination after concluding only two factors were relevant: (1) the relevant reasonable consumer; and (2) what the relevant reasonable consumer would reasonably believe based on what he saw on the screen. Id. at 937.

The present case regarding likelihood of confusion differs from Multi Time Machine III in only one principal way—the factual record was not developed by Altinex. For example, Altinex identified only two listings on Alibaba's websites that allegedly used its trademarks. (SGD ¶¶ 12, 80.) Altinex has not shown that either of those two listings led to sales in the United States. (Id. ¶ 81, Hagiz I Ex. 14, Dkt. No. 89-18.) Additionally, the listings were removed. (SGD ¶ 15.)

As to the first of these Multi Time Machine III factors, Altinex puts forth no evidence whatsoever to show who the relevant reasonable consumer would be for purposes of analysis under Sleekcraft and Multi Time Machine III. Altinex does not suggest any reason that the relevant reasonable consumer is not "a reasonably prudent consumer accustomed to shopping online." Multi Time Machine III, 804 F.3d at 937 (quoting Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1176 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 13-01545 JVS (RNBx)                    Date   March 25, 2016

Title      Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

Turning to the second factor, Altinex submits screen shots of the Websites as
evidence of what the relevant reasonable consumer could reasonably believe based on
what he saw on the screen. (See Exhibit 106. See also M3 (the "M3 Exhibit"), Dkt No.
95.) However, this factor does not support Altinex. It is true that, unlike in Multi Time
Machine III, a user's use of the search window could cause third party listings containing
trademarked terms to be displayed on the screen. Nevertheless, this Court concludes that,
on this record, the factor does not weigh in favor of Altinex because, at least as the
screens are presented to the Court in Exhibit 106, the screens would indicate to a
consumer accustomed to shopping online that Alibaba's search engine displayed the
search result because of a text-match between the search term and the text within the
third-party authored listing, not because Alibaba is making any statement that it, or its
search engine, are affiliated with Altinex. Cf. Tiffany, 600 F.3d at 102–103 ("none of
[search engine's] uses of the mark suggested that [plaintiff] affiliated itself with [search
engine] or endorsed the sale of its products through [search engine's] website").

For the foregoing reasons, Altinex has not carried its burden of showing a
likelihood of confusion. Consequently, Altinex's failure to show likelihood of confusion
is a second basis for concluding that Alibaba is entitled to summary judgment on
Altinex's direct trademark infringement claims.[3]

B.   Summary Judgment - Direct Patent Infringement Claims

1.   Dr. Motley's Testimony

Alibaba has moved to preclude the testimony of Dr. Motley. (Mot Preclude, Dkt.
No. 90) Altinex opposes. (Opp'n Mot. Preclude, Dkt. No. 97) Altinex's opposition
argues in conclusory fashion that "Dr. Motley reviewed and analyzed the relevant
www.aliexpress.com pages . . . which he deemed sufficient." (Opp'n Mot. Preclude p. 5.)
However, Dr. Motley's declaration is flawed and much of it must be stricken.

First, ¶ 11 of Dr. Motley's declaration states it is his opinion that there are no
messages on any pages stating explicitly that Alibaba does not sell certain products. That

---

[3] As Altinex has not pleaded a cause of action for contributory trademark infringement, (SGD
¶ 17), the Court need not, and does not, address the possibility of Alibaba's liability under such a theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

opinion testimony is improper because it is blatantly controverted by the pages reproduced in the Terms of Use. (See M3 Exhibit 048–053 ("Alibaba.com does not control and is not . . . responsible for . . . the products or services offered for sale on the sites or the ability of the sellers to complete a sale.").) Paragraph 20 of Dr. Motley's declaration, stating "there is absolutely nothing in the Terms of Use pages . . . that would inform a reasonable consumer . . . that a purchase from Alibaba is actually a purchase from another entity" does not save his testimony, because it is blatantly contradicted. (Id.)

Dr. Motley's testimony is further flawed because he did not review the Transaction Services Agreement that all purchasers on the site acknowledge they have read, and did not review any portion of the web page where the consumer can actually encounter an offer by a seller. (See, e.g., Decl. Hagiz Further Supp. Mot. Summ. J. ("Hagiz Decl. II") Ex. 3, Dkt. No. 101-3 (specifying that "seller" is an entity that is not Alibaba).) This is clear to the Court because no part of M3 contains indispensable pages of the shopping process, such as the page where a potential purchaser "checks out" his purchasers or a page where a potential purchaser enters payment or shipping details. For these reasons, Dr. Motley's interpretation is not a credible description of how a user interacts with the Websites.

The Court also finds Abaxis, Inc. v. Cepheid, 10-cv-2840, 2012 WL 2979019 (N.D. Cal. July 19, 2012), persuasive. Dr. Motley may not offer opinion on purely legal matters. Id. at *3. However, Dr. Motley ultimately opines on such a purely legal matter: whether Alibaba "offers for sale" the products that are actually sold by third parties. See Milo & Gabby, LLC v. Amazon.com, ___ F. Supp. 3d ___, 2015 WL 6690074, at *1 (W.D. Wash. Nov. 3, 2015) (any verdict from a jury would be "only advisory in nature" because whether what was communicated constitutes an offer to sell is a question of law for the court); Kramer v. Creative Compounds LLC, 11-cv-1965, 11-cv-2033, 2013 WL 6048804 at *3, n.2 (D. Ariz. Nov. 15, 2013) ("Whether a communication is an offer, however, is a question of law.").

For the foregoing reasons, the Court concludes that Altinex has not carried its burden under Federal Rule of Evidence 702 to show that Dr. Motley has based his opinion on sufficient facts or data, or that Dr. Motley reliably applied his stated principles and methods to the facts of this case. For these reasons, no reasonable jury could credit Dr. Motley's testimony. Consequently, Dr. Motley's impermissible opinion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

testimony is stricken and is not evidence for the Court to consider on this motion. However, the Court considers Exhibit M3 as part of Altinex's record as to what Altinex contends constitutes Alibaba's offer to sell.[4]

The Court forms no opinion regarding whether Dr. Motley's purported specialized knowledge could help the trier of fact, or if Dr. Motley's testimony was based on reliable principles and methods.

> 2.    Merits of Summary Judgment Motion

Altinex admits that Alibaba does not sell the allegedly infringing products. (SGD ¶ 77.) Altinex does not contend that Alibaba makes or uses any patented invention without authority. (See, e.g., FAC ¶ 15.) This case therefore turns on whether Altinex "offers to sell . . . within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a).

This Court already set forth much of the applicable law regarding "offers to sell" a patented invention in its previous Order. Specifically, under 35 U.S.C. § 271(a), "an offer is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Alibaba.com Hong Kong LTD v. P.S. Prods., 10-cv-4457, 2012 WL 1668896 at *3 (N.D. Cal. May 11, 2012) (quoting Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1050 (Fed. Cir. 2001) (quoting Restatement (Second) of Contracts § 24 (1981))). The existence of an offer for sale "requires the application of traditional contract law principles," and that under such principles, an offer must indicate to a prospective buyer that "his assent to that bargain is invited and will conclude it." Linear Tech. Corp., 275 F.3d at 1048-50 (finding that evidence that a sales representative spoke to potential customers to help defendant determine an appropriate price for their product did not constitute an offer for sale because it did not communicate an intent to be bound to a sale). See also Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1254-55 (Fed. Cir. 2000) ("[W]e . . . define § 271(a)'s 'offer to sell' liability according to the norms of traditional contractual analysis.").

---

[4] For purposes of this motion, the Court assumes without deciding that Exhibit M3 is admissible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 13-01545 JVS (RNBx)          Date   March 25, 2016

Title      Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

Just as in P.S. Products, "the relevant inquiry is whether a person shopping on Alibaba's websites would have **reasonably believed** that Alibaba, and not third-party sellers, was the seller with title or possession of a product who could have entered into a contract to transfer title or possession." P.S. Prods., 2012 WL 1668896, at *3 (emphasis added).

The Court concludes that the result in P.S. Products case is distinguishable because here Alibaba has submitted uncontroverted evidence pertaining to the fact that any user purchasing a product from the Websites accepts both Alibaba's Free Membership Agreement and Transaction Services Agreement. (SGD ¶¶ 20–24.)

Altinex suggests that "Alibaba does not offer any authority for the proposition that just because a member clicked on an online agreement, he or she is deemed to have formed a belief consistent with the information in a rather dense online agreement that most people don't read." (Opp'n pp. 7–8.) That argument is incorrect. Alibaba has submitted authority related to the binding effect of online contracts. (See Mot. pp. 11-12.) Alibaba has suggested (and Altinex's own propounded evidence confirms) the uncontroverted evidence is that all purchasers on its website have accepted the Transaction Services Agreement. (SGD ¶ 22. See also Gershfield Decl. ¶ 8 ("purchasing or listing items on www.aliexpress.com requires one to click on the membership agreement").) The Transaction Services Agreement unambiguously states, truthfully, that "each online transaction is made by and between a Seller and a Buyer only" and "[Alibaba] shall not be considered as a party to the Online Transaction" and "[Alibaba] does not represent Seller or Buyer in any Online Transaction." (SGD ¶¶ 23, 77.)

Altinex suggests that it has raised a triable issue of material fact through the expert witness report of Dr. Michael Motley. This Court disagrees, see Section III.B.1, supra. Evidence submitted in support of Alibaba's motion for summary judgment confirms that all prospective purchasers must acknowledge having read (or having been given the opportunity to read prior to their acceptance) the Transaction Services Agreement and Altinex admits that this is the case. The Transaction Services Agreement unambiguously states that Alibaba is not the seller and is not a party to any transaction between buyer and seller. The provisions of the Transaction Service Agreement giving rise to a reasonable consumer's knowledge that Alibaba is not the seller of the purportedly infringing products, are enforceable. See Ian Ballon, 1 E-Commerce and Internet Law § 21.03 n.5 (listing dozens of cases where federal courts have enforced so-called

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

"clickwrap" contracts); <u>Hancock</u> v. <u>AT&T</u>, 701 F.3d 1248, 1258 (10th Cir. 2012) (no reason that a clickwrap agreement would not be valid and enforceable); <u>Nguyen</u> v. <u>Barnes</u> & <u>Noble</u> <u>Inc.</u>, 763 F.3d 1171, 1175–79 (9th Cir. 2014) (distinguishing between types of online agreements).

In Section III.B.1, *supra*, the Court noted that it would still consider the M3 Exhibit submitted along with Dr. Motley's testimony.[5] In the M3 Exhibit, there are certain pages that include a button that says, "Buy Now." (<u>E.g.</u> M3 Exhibit 008) Assuming, *arguendo*, that those "Buy Now" buttons indicate an offer to sell,[6] a reasonable consumer would have to consider the button in the context of the rest of the page. However, in every single page of the M3 Exhibit that includes these "Buy Now" buttons, there is an unambiguous reference to a third party seller. (<u>See</u>, <u>e.g.</u>, M3 Exhibit 008 (right hand side of page stating: "Sold by . . . Nontong Ze Shan Electric Co. Ltd."); M3 Exhibit 019 (same); M3 Exhibit 010 (a cropped screen shot, still noting a different store number, ratings for the particular store, and the option to add the store a list of "favorite stores"); M3 Exhibit 013 (same); M3 Exhibit 023 (another selectively cropped screen shot, also stating "***this seller's*** categories") (emphasis added); M3 Exhibit 031 (same); M3 Exhibit 038 (same).)

Based on the foregoing facts, the foregoing relevant authority on clickwrap agreements, and Altinex's failure to present any countervailing evidence[7] or persuasive

---

[5] At the March 21, 2016 hearing, counsel for Alibaba indicated several of the screen shots included as part of the M3 exhibit were not disclosed during fact discovery. This is despite Alibaba's request for production number 26 (request for documentation regarding product listings that Altinex contend offer goods for sale that infringe Altinex's patents) (see Hagiz I, Ex. 17) and a letter from Alibaba to counsel for Altinex sent in August 2015 indicating that Altinex had produced only "several screen shots" allegedly sent to Alibaba's *former* litigation counsel (who left the suit in October 2014). (See Hagiz I, Ex. 18 p. 4.)

[6] This is a position this Court considers doubtful. Terms crucial to internet purchases, such as payment information and shipping information, are not communicated on these pages and so the "buy now" button could not indicate to a prospective online purchaser that clicking on the button would form a binding contract. <u>Linear Tech. Corp.</u>, 275 F.3d at 1048-50.

[7] In <u>Milo & Gabby, LLC v. Amazon.com</u>, __ F. Supp. 3d __, 2015 WL 6690074 (W.D. Wash. 2015) <u>appeal docketed</u>, No. 16-1290 (Fed. Cir. Dec. 7, 2015), the district court held, after a jury trial found particular facts, that Amazon.com did not "offer to sell" a patented product. The jury in that case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

argument, no reasonable consumer who accepts an offer on Alibaba's website could
conclude that it is Alibaba that actually offered to sell the infringing product.

For the foregoing reasons, on this record, no reasonable jury could conclude that
Alibaba offers to sell, without authorization, a patented product under 35 U.S.C. §
271(a). Alibaba is therefore entitled to summary judgment on Altinex's direct patent
infringement claims.

---

was tasked with answering a few questions (the questions, however, were only advisory in nature) and
all of those questions were answered in the negative. The Court has looked at the questions posed to the
jury in Milo & Gabby and concludes that Altinex has submitted no evidence that would permit a
reasonable jury to find any of those questions answered in the affirmative in this case. Instead, Altinex
admits that all the listings that appear on Alibaba's website were authored by third parties and not by
Alibaba. (SGD ¶ 90.) Therefore, those third parties "communicated a description of allegedly infringing
products," those third parties "communicated the price at which the allegedly infringing product could
be purchased," those third parties "provided the descriptions of the allegedly infringing products," those
third parties "set the price at which the allegedly infringing products could be purchased," those third
parties "set the quantity(ies) of the allegedly infringing products," and, most importantly, those third
parties "communicated that it was willing to enter into a bargain to sell the allegedly infringing
products." The Court agrees with the Milo & Gabby court that under current case law, sellers like
Amazon and Alibaba are not responsible, **under a theory of direct infringement**, for third parties
offering to sell allegedly infringing products on their platforms. Id. 2015 WL 6690074, at *2.

The Milo & Gabby court had earlier, on defendant's motion for summary judgment, denied
defendant's motion on direct patent infringement liability. Milo & Gabby, LLC v. Amazon.com, Inc.,
No. C13-1932RSM, 2015 WL 4394673, at *13–14 (W.D. Wash. July 16, 2015). The court noted that
defendants' website "notes the price, allows the buyer to choose a quantity, and allows the buyer to then
conclude the purchase." Id. at *14. This Court believes that the Milo & Gabby court gave insufficient
attention to the fact that the third party that sets the price, the third party that sets the quantities available,
and the buyer cannot conclude the purchase without acknowledging that the website operator is,
truthfully, not the seller. Cf. MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420
F.3d 1369, 1376 (Fed. Cir. 2005) (affirming grant of summary judgment on direct infringement claim
where plaintiff provided no relevant evidence to support its claim that defendant offered to sell an
accused product); Petter Investments, Inc. v. Hydro Eng'g, Inc., 14-cv-0045, 2015 WL 222329, at *4–5
(D. Utah Jan. 9, 2015) (granting summary judgment in favor of defendants on issue of whether
defendants offered to sell an infringing product even though defendants maintained a link to a press
release touting an allegedly infringing invention. The link to the press release was removed when
defendants learned about it.) But cf., Area 55, Inc. v. Amazon.Com, Inc., 11-cv-0145, 2012 WL
12517661 (S.D. Cal. May 3, 2012) (holding that plaintiffs, on adequately developed record, raised a
genuine issue of material fact.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

C.    <u>Summary</u> <u>Judgment</u> - <u>Inducement</u> <u>Claims</u>

Altinex argues that it has presented sufficient evidence warranting denial of
Alibaba's motion for summary judgment on Altinex's inducement claims. The Court
disagrees.

As noted in this Court's prior order, actively inducing patent infringement is
prohibited under 35 U.S.C. § 271(b). "[I]nduced infringement under § 271(b) requires
knowledge that the induced acts constitute patent infringement." <u>Global-Tech
Appliances, Inc. v. SEB S.A.</u>, 131 S. Ct. 2060, 2068 (2011). If a patent owner fails to
show knowledge of infringement, then it must prove the two requirements of willful
blindness, which include that "(1) the defendant must subjectively believe that there is a
high probability that a fact exists and (2) the defendant must take deliberate actions to
avoid learning of that fact." <u>Id.</u> at 2069–70.

1.    Knowledge

Altinex alleges that Alibaba acquired knowledge of infringement in
November 2013. The record presented to the Court on this motion for summary
judgment does not support this conclusion.

Altinex provides two purported pieces of evidence to contradict Alibaba's asserted
fact that "Altinex has identified no evidence showing that Alibaba specifically intended
for end users to infringe any claim of any asserted patent."

The first is that Altinex's CEO and counsel met with Alibaba's litigation counsel
in San Francisco and during the meeting, Altinex's counsel "showed images of
infringing products offered for sale on Alibaba's websites, including descriptions and
model numbers, to [Alibaba's counsel] on an iPad." (Khiterer Decl. ¶ 18.) Altinex's
counsel continues: "in November and December 2013, I sent a number of e mails to Mr.
Woo in which I provided the model numbers of infringing products offered for sale on
Alibaba's websites, PDFs of Alibaba's web pages depicting infringing products, a link to
such infringing products and search terms leading to locating such infringing
products."(<u>Id.</u>)

The record evidence only shows that Altinex provided search terms. In opposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 13-01545 JVS (RNBx)              Date    March 25, 2016

Title    Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

to summary judgement, Altinex presents only one of the purported emails. That email (as
presented in Exhibit 101), dated November 21, 2013, does not actually include any PDF
attachments, does not provide model numbers, does not provide a link to infringing
products, and does not even suggest particular search terms. (See Exhibit 101. See also
Hagiz Decl. Further Supp. Mot. Summ. J. ("Hagiz Decl. II") ¶¶ 21–28 (specifically
stating how Exhibit 101 was manipulated to differ from the email produced in
discovery).) Appended to ¶ 18 of the Khiterer declaration, Altinex purports to provide
examples of information set by email. But that "information" only suggests particular
search terms Altinex requested Alibaba search for, including search terms that are
generically descriptive of the patent field—not terms exclusive to Altinex. (See Khiterer
Decl. p. 8) Additionally, the "link" Altinex's counsel purported to provide appears to be
a link to a search of the generic term "table socket" and is not a link to a particular listing
or any information about particular infringing model numbers. (Id.) To summarize, the
information that Altinex purported to provide in November and December of 2013 was
largely not information at all, but rather a request that Alibaba police third party
listings—including listings that appear when an end-user searches for generic
terms—without providing any legal authority suggesting that Alibaba had a duty to
police those results in this manner.

    The second piece of Altinex's purported evidence is Altinex's CEO's assertion
that "throughout this lawsuit, I periodically checked whether the accused product
remained or [sic] www.aliexpress.com and/or www.alibaba.com. Some products . . .
were removed in January – February 2015.[8] Chuangd IB products were removed from
www.aliexpress.com but remained on www.alibaba.com until May 2015. Zeshan ZSH
products remained on www.aliexpress.com until at least late 2015." (Gershfeld Decl.
¶ 15.) The deficiency in this argument is that Altinex does not link this purported
evidence with any specific date that Alibaba purportedly obtained any specific

---

[8] It should be noted here that, until March 2015, the operative pleading was still the original
complaint and the original complaint did not include accusations against any specific products. (See
generally Dkt No. 1.) The First Amended Complaint (in a proposed form) was first attached as an exhibit
to a declaration filed on February 10, 2015. (See Dkt. No. 40 Ex. 12.) Alibaba received a draft of the
proposed amended complaint in January 2015, a time frame that aligns with Gershfeld's declaration that
"some products . . . were removed in January – February 2015." (See Hagiz Decl. Ex. 15 p. 6, Dkt. No.
89-19; Gershfeld Decl. ¶ 14.) This analysis fully addresses Altinex's argument raised at the March 21,
2016 hearing regarding the screen shot listed at M3 page 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

knowledge that these particular products infringed.[9]

One *de minimis* exception is that Exhibit 107 includes a single screen shot of a Chuangd IB product, listed with model number IB-2, that was purportedly captured on May 5, 2015. The Chuangd IB-2 product was specifically accused as infringing Altinex's patents in the FAC. (FAC ¶¶ 15, 21, 27, 33, 39, 45.) However, this is not sufficient to raise a genuine issue of triable fact. Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Moreover, Gershfeld confirms that this Chuanged IB product "remained on www.alibaba.com **until May 2015**." (Gershfeld Decl. ¶ 15. (emphasis added)) This testimony, when viewed in conjunction with Exhibit 107, leads to only one permissible inference on this record—that the listing was removed expeditiously. No evidence submitted in opposition tends to show, for instance, that this particular listing existed *before* May 2015.

For the foregoing reasons, Altinex has failed to raise a triable issue of fact on Alibaba's knowledge. No reasonable jury could, when viewing the evidence submitted in opposition to the motion for summary judgment, conclude that Alibaba obtained knowledge about infringing listings on its website and subsequently failed to take action.[10]

---

[9] Neither the original complaint nor the FAC identified particular model numbers for the "Zeshan ZSH series of products." Identifying accused products in this manner is insufficient when more detailed information is available. Cf. ASUS Computer Int'l v. Round Rock Research, LLC, 2014 WL 1463609, at *7 (N.D. Cal. Apr. 11, 2014) (under Northern District of California Patent Rules, an identification of a series of products is not sufficient).

[10] For completeness, the Court also considers the Hagiz Declaration ¶¶ 21–28 submitted in reply. Mr. Hagiz declares that he reviewed the produced documents and only one e-mail "identified any specific listings allegedly provided accused products." Alibaba discloses that email as Hagiz II Exhibit 11. The email includes an attachment. That attachment is a screenshot, that (when read in conjunction with the email) could be construed as accusing a branded ZESHAN product with Model Number ZSH8T-01 as infringing Altinex's patents. Nevertheless, Altinex has produced in opposition no evidence that a product with Model Number ZSH8T-01 ever, thereafter, appeared on the Alibaba website and certainly not for a period that could imply that Alibaba obtained knowledge but failed to act. (See M3 Exhibit 031–037 (a third party's listing of the ZSH8T-01 product, with a screen shot dated November 20, 2013).) Altinex purports to show that ZSH-model products remained on aliexpress.com until late 2015. (See Exhibit 107.) These listings did not identify Zeshan as the manufacturer and Altinex does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |

| | |
|---|---|
| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |

2.    Willful Blindness

The Federal Circuit recently addressed inducement liability under 35 U.S.C. § 271(b) and "willful blindness" in Suprema, Inc. v. Int'l Trade Comm'n, 626 Fed. Appx. 273 (Fed. Cir. 2015).

The Federal Circuit, summarizing the law, stated:

> A party who "actively induces infringement of a patent" under 35 U.S.C. § 271(b) is liable for patent infringement if the party knows that the induced acts constitute patent infringement. Global–Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 131 S.Ct. 2060, 2063, 179 L.Ed.2d 1167 (2011). A defendant can be found liable for induced infringement if it has actual knowledge of the infringement, or if it is willfully blind to the infringement. Id. The doctrine of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Id. at 2070.

> "The requisite intent to induce infringement may be inferred from all of the circumstances," and "may be established through circumstantial evidence." Broadcom Corp. v. Qualcomm, Inc., 543 F.3d 683, 699 (Fed. Cir. 2008). The question of whether [defendant] was willfully blind to [third party's] infringement is a question of fact. National Presto Indus. v. West Bend Co., 76 F.3d 1185, 1192 (Fed. Cir. 1996).

Suprema, Inc., 626 Fed. App'x at 280.

The Federal Circuit held that a few facts merited finding in favor of the International Trade Commission's finding of willful blindness. First, the commission observed that the defendant engaged in extensive market research of defendants'

show that Alibaba had knowledge of these listings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 13-01545 JVS (RNBx) | Date | March 25, 2016 |
|---|---|---|---|

| Title | Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al. |
|---|---|

competitors. Id. at 281. Second, the commission observed that the defendant researched particular patents that incorporated by reference applications that led to the particular patent that the defendant was alleged to have infringed by inducing infringement. Id. Next, the commission had found that defendant was "well-aware" of competitor products in developing its accused products. Id. Essentially, the inventor would have "undoubtedly discovered" the relevant patent. Id. Also, the commission found that defendant had "aided and abetted" the third party in adapting its product. Id.

At the end of the opinion, the Federal Circuit noted the result (upholding the Commission's finding of willful blindness) was a result of a "deferential standard of review" and held that "none of the facts upon which the Commission relied, in isolation, would support a finding of willful blindness." Id. at 282.

Here, Altinex submits its case only on Alibaba's purported failure to remove products for over two years after receiving notice. As discussed above in Section III.C.1, *supra*, Altinex has not submitted any evidence that Alibaba failed to remove purportedly infringing listings of which it was made aware, or listings selling purportedly infringing products identified by model number. Altinex submits no other evidence toward any other factor that could show willful blindness. Therefore, even though willful blindness is a question of fact, Altinex has not raised more than a scintilla of evidence tending to show that Alibaba was willfully blind. Considering all of the evidence thus far submitted, and considering Altinex's burden to show willful blindness, no reasonable jury could conclude that Altinex met its burden to show that Alibaba was willfully blind.

D.     Summary Judgment - Unfair Competition

As the Court identified in its Order re Defendant's Motion for Judgment on the Pleadings, Altinex's claim under California's Unfair Competition Law ("UCL") is "dependent on [Altinex's] patent infringement and trademark infringement claims." (Dkt. No. 46 pp. 7–8.) As analyzed above, Alibaba is entitled to judgment on those claims. Consequently, Alibaba is also entitled to judgment as a matter of law on Altinex's UCL claim.

IV.     Conclusion

For the foregoing reasons, the Court holds that no reasonable jury could conclude

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 13-01545 JVS (RNBx)          Date   March 25, 2016

Title   Altinex Inc. V. Alibaba.com Hong Kong Ltd., et al.

that Alibaba used Altinex's trademarks, no reasonable jury could conclude that Alibaba's "use" of Altinex's trademark was likely to cause confusion, no reasonable jury could conclude that Alibaba directly infringed any of the patents asserted in this case, and no reasonable jury could conclude that Alibaba actively induced infringement of any of the patents asserted in this case.

Consequently, Alibaba is entitled to judgment as a matter of law.

Altinex's request for leave to supplement its opposition, made at the March 21, 2016 hearing, is denied.

**IT IS SO ORDERED.**

0   :   00

Initials of Preparer   kjt